SEYFARTH SHAW LLP
Timothy M. Rusche (SBN 230036)
trusche@seyfarth.com
Peter J. Choi (SBN 306763)
pchoi@seyfarth.com
Marie N. Naguib (SBN 347601)
mnaguib@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
Telephone No.: (213) 270-9600
Facsimile No.: (213) 270-9601

Attorneys for Defendant
INTEGRATED DNA TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER COLLINS, individually, and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>INTEGRATED DNA TECHNOLOGIES, INC., a corporation; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. **'23CV1066 LAB WVG**<br><br>**DEFENDANT INTEGRATED DNA TECHNOLOGIES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>San Diego County Superior Court Case No. 37-2023-00016908-CU-OE-CTL<br><br>Action Filed: April 24, 2023 |

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF CHRISTOPHER COLLINS AND HIS COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that Defendant Integrated DNA Technologies, Inc. ("IDT"), hereby removes the above-captioned case from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California, asserting original jurisdiction under 28 U.S.C. section 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), removal jurisdiction under 28 U.S.C. sections 1441(a), 1446, and 1453, and supplemental jurisdiction pursuant to 28 U.S.C. section 1367.

**I.     BACKGROUND AND PROCEEDINGS IN STATE COURT**

1. On April 24, 2023, Plaintiff Christopher Collins ("Plaintiff") filed a class action Complaint in San Diego County Superior Court in the State of California entitled *Christopher Collins, individually and on behalf of all others similarly situated, v. Integrated DNA Technologies, Inc., a corporation; and Does 1-10, inclusive*, Case No. 37-2023-00016908-CU-OE-CTL.

2. On May 9, 2023 Plaintiff served the Complaint on IDT and at that time also served a Summons, Civil Case Cover Sheet, Notice of Case Assignment and Case Management Conference, and ADR Information Packet. A true and correct copy of the Summons and Complaint (in addition to the civil case cover sheet, notice of case assignment and case management conference, and ADR packet) served on IDT are attached hereto as **Exhibit A**.

3. The Complaint alleged causes of action for: (1) Failure to Pay Minimum and Straight Time Wages, (2) Failure to Pay Overtime Wages, (3) Failure to Provide Meal Periods, (4) Failure to Authorize and Permit Rest Periods, (5) Failure to Timely Pay Final Wages at Termination, (6) Failure to Provide Accurate Itemized Wage Statements, (7) Failure to Indemnify Employees for Expenditures, (8) Failure to Produce Requested Employment Records, and (9) Violation of the Unfair Competition Law.

4. The Complaint seeks to certify a class of "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time" during the class period. (Ex. A, Compl., ¶ 25.)

5. Attached as **Exhibit A** are true and correct copies of all pleadings served on IDT and filed in the state court action within the meaning of 28 U.S.C. § 1446(a).

## II. TIMELINESS OF REMOVAL

6. Plaintiff served her Summons and Complaint on May 9, 2023. This Notice of Removal is timely because it is being filed within thirty (30) days of the service upon IDT of a copy of the Summons and Complaint, and within one (1) year of the commencement of this action. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (thirty-day removal period begins when defendant is formally served).

## III. JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

7. This Court has original subject matter jurisdiction over this action under CAFA, codified in relevant part in 28 U.S.C. section 1332(d)(2). As set forth below, this action is properly removable pursuant to 28 U.S.C. section 1441(a) because the alleged amount in controversy exceeds $5,000,000, exclusive of interests and costs, and at least one putative class member is a citizen of a state different from any named defendant (28 U.S.C. §§ 1332(d)(2) & (6)), and the number of putative class members is greater than 100. *See* 28 U.S.C. §§ 1332(d)(5)(B).

### A. There Is Minimal Diversity For Removal Under CAFA

8. CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction. That is, at least one purported class member must be a citizen of a different state from any named defendant. *See* 28 U.S.C. § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that to achieve its purposes CAFA provides expanded original diversity jurisdiction for class

actions meeting the minimal diversity requirement in 28 U.S.C. § 1332(d)(2)). Here, such minimal diversity exists among the parties.

### 1. Plaintiff Is A Citizen Of California

9. For diversity purposes, a person is a "citizen" of the state in which they are domiciled. *See Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is *prima facie* evidence of his or her domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *see also Golub v. Wells Fargo Bank, N.A.*, No. CV 14-01443 SJO, 2014 WL 997336, at *1 (C.D. Cal. March 13, 2014) (plaintiff's uncontroverted claim of residence in complaint sufficient to establish citizenship for purposes of diversity). Domicile for purposes of diversity is determined as of the time the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

10. Here, Plaintiff alleges that he "is a California resident". (Ex. A, Compl., ¶ 7.) Plaintiff's personnel file indicates his residence was in Chula Vista, California. (Declaration of Marie N. Naguib, ¶ 3, Ex. B.) Further, the results of a public records search show that Plaintiff's last known address is in California. (Naguib Dec., ¶ 4, Ex. C.) Accordingly, Plaintiff is, and was at the time of filing this action, a citizen of California.

### 2. IDT Is Not A Citizen Of California

11. Under 28 U.S.C. section 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The appropriate test to determine a corporation's principal place of business is the "nerve center" test. *Hertz Corp. v. Friend*, 599 U.S. 77, 92 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's high level officers direct, control, and coordinate the corporation's activities," which is typically where the corporation maintains its headquarters. *Id*.

12. IDT is a citizen of Iowa and Delaware and is not now, and was not at the time of the filing of this action, a citizen of the State of California within the meaning of 28 U.S.C. section 2331(c)(1). IDT is incorporated under the laws of the State of Delaware, with its principal place of business in Iowa. (Declaration of Bobbi Jenks, ¶¶ 3-

1  4.) IDT's principal place of business is, and has been since this action commenced, in
2  Iowa because IDT maintains corporate offices in Iowa, from which its officers direct,
3  control, and coordinate its activities and business operations. (*Id.*) From Iowa, IDT makes
4  the majority of its decisions regarding core executive and administrative operations,
5  including, but not limited to, those relating to company-wide policies and procedures,
6  human resources, legal affairs, finance, and general operations. (*Id.*)

7  13.  Thus, for purposes of diversity of citizenship, IDT is and has been at all
8  times since this action commenced, a citizen of the States of Delaware and Iowa. Because
9  Plaintiff is a citizen of California and IDT is a citizen of Delaware and Iowa, minimal
10 diversity exists for purposes of CAFA.

### 3.  Doe Defendants' Citizenship Must Be Disregarded

14.  The residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. 1332. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (doe defendants need not join in removal). Thus, Doe defendants 1 through 10 do not deprive this Court of jurisdiction.

15.  Accordingly, because Plaintiff is a citizen of California and IDT is not a citizen of California, diversity of citizenship exists between Plaintiffs and Defendants for purposes of CAFA.

### B.  The Number Of Putative Class Members Exceeds 100

16.  CAFA requires that the aggregated number of members of all classes proposed in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

17.  Plaintiff seeks relief on behalf of a putative class compromised of "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the

1  filing of the initial complaint in this action and ending when notice to the Class is sent."
2  (Ex. A, Compl., ¶ 25.)

3      18.    From October 28, 2018, to June 1, 2023, IDT employed approximately 180
4  non-exempt employees in California. (Declaration of Robbins ("Robbins Decl."), ¶ 3.)

5      19.    Accordingly, the aggregated number of members of the putative class
6  proposed by Plaintiff exceeds the 100-member requirement.

        **C.**    **The Amount in Controversy Exceeds $5,000,000.00**

8      20.    While IDT specifically denies liability as to all of Plaintiff's claims and
9  allegations and the ability for this action to proceed on a class basis, the amount in
10 controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and
11 costs. All calculations supporting the amount in controversy are based on the Complaint's
12 allegations (along with other documents as identified herein), assuming, without any
13 admission, the truth of the allegations and assuming liability is established. Likewise,
14 these calculations are based on the putative class alleged in the Complaint and in no way
15 indicate that class treatment is appropriate in this case, or that Plaintiff has standing to
16 represent any such class, or that the class proposed would meet the requirements set forth
17 in Rule 23 of the Federal Rules of Civil Procedure. IDT expressly reserves the right to
18 challenge, among other things, Plaintiff's claims and allegations, adequacy and standing
19 to represent any class, class definitions, and calculation of damages in all respects.

20     21.    In calculating the amount in controversy under CAFA, the claims of the
21 individual members of a putative class are aggregated to determine if the amount in
22 controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). Congress
23 intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in
24 litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint
25 of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive
26 relief, or declaratory relief)." Sen. Jud. Comm. Rep, S. Rep. No. 109-14, at 42 (2005).
27 Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes
28 clear that any doubts regarding the maintenance of interstate class actions in state or

federal court should be resolved in favor of federal jurisdiction. *Id.* At 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case… . Overall, § 1332(d) was intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

22.     To establish that the amount in controversy exceeds the jurisdictional amount, the defendant need only make a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).

23.     Because Plaintiff has not alleged the class's particular damages, reasonable estimates of the alleged amount in controversy is appropriate. As such, courts may assume a 100% violation rate in calculating the amount in controversy for removal purposes when a more precise calculation is not apparent on the face of the complaint. *See e.g. Altamirano v. Shaw Indus.*, No. C-13-0939 EMC, 2013 WL 2950600, *11-12 (N.D. Cal. June 14, 2013) ("Plaintiff's allegations about the pervasiveness of the policies" justified 100% violation rates.); *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate."); *Muniz v. Pilot Travel Centers LLC.*, No. S-07-0325, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) ("Plaintiff is the 'master of [his] claim[s],' and if [he] wanted to avoid removal, [he] could have alleged facts specific to [his] claims which would narrow the scope of the putative class or the damages sought" to indicate a violation rate smaller than 100%.).

24.     Here, Plaintiff seeks to assert nine class claims under various provisions of the California Labor Code and the Unfair Competition Law and seeks general damages/restitution, special damages/lost wages, penalties, injunctive relief, prejudgment

interest, attorneys' fees, and costs on behalf of herself and the putative class. Even making the most conservative calculations, the amount in controversy on Plaintiff's putative class claims far exceeds the $5,000,000.00 jurisdictional amount.

### 1.  Unpaid Wages Claim (First and Second Cause of Action)

25.  Plaintiff alleges that "throughout the statutory period" class members and he were not compensated for all regular and overtime hours worked as a result of Defendant's "policy and practice of not paying Plaintiff and the class for all hours worked, including minimum, straight time, and overtime wages." (Ex. A, Compl., ¶ 15.) Specifically, Plaintiff alleges that IDT "required Plaintiff and the Class to work 'off-the-clock', uncompensated, by, for example, requiring Plaintiff to don and doff PPE before and after clocking in and out for work. Some of this unpaid work should have been paid at the overtime rate." (*Id.*) Plaintiff also seeks liquidated damages in an amount equal to the unpaid wages. Cal. Labor Code § 1194.2; (Ex. A, Compl., ¶ 39.)

26.  The statute of limitations for unpaid wages under California Labor Code §§ 510 and 1194 is three years. Cal Civ. Proc. § 338. The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations. *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) ("actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). Plaintiff alleges a claim for failure to pay overtime wages as part of her unfair competition claim under Business and Professions Code section 17200, et seq. (Ex. A, Compl., ¶ 93.) Accordingly, the proposed class period for Plaintiff's minimum wage and overtime claims is from October 28, 2018[1] to the present.

27.  From October 28, 2018 to June 1, 2023, Defendant employed approximately 180 putative class members. (Robbins Decl., ¶ 3.) The average hourly rate for Plaintiff and the Class from October 28, 2018 to June 1, 2023 was $24.15. (*Id.*) The average overtime rate for Plaintiff and the Class October 28, 2018 to June 1, 2023 was $36.23.

---

[1] Plaintiff's Complaint defines the class period as the "period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent," purportedly based on California Rules of Court, Emergency Rule 9(a). (Ex. A, Compl., ¶ 25.)

1  (*Id.*) Plaintiff and the Class Members worked approximately 14,889 weeks from October 28, 2018 to June 1, 2023. (*Id.*)

28.     Although Defendant denies Plaintiff's allegations or that he and putative class members are entitled to any relief, it is reasonable to assume from Plaintiff's allegations about a policy and practice of not paying wages that employees worked at a minimum one hour of unpaid straight time per week and one hour of unpaid overtime per week. *See, e.g., Molina v. Pacer Cartage, Inc.*, 47 F. Supp. 3d 1061, 1066 (S.D. Cal. 2014) (amount in controversy satisfied when "a conservative estimate would be that the class members worked three hours overtime per week"); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019) ("two hours of unpaid overtime per week is reasonable" based on allegations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) ("Defendant's assumptions that each class member worked 2.5 hours of overtime per week" is "conservative").

29.     Conservatively assuming that Plaintiff and the class members worked one hour per week of unpaid straight time from October 28, 2018 to June 1, 2023, the potential unpaid minimum wages total $359,569.35 ($24.15 hourly rate x 1 hour x 14,889 workweeks). (Robbins Decl., ¶ 3.)

30.     Further, the potential liquidated damages for the one hour of unpaid straight time from October 28, 2018 to June 1, 2023 is $359,569.35 ($24.15 hourly rate x 1 hour x 14,889 workweeks). (*Id.*)

31.     Additionally, conservatively assuming that Plaintiff and the class members worked one hour per week of unpaid overtime from October 28, 2018 to June 1, 2023, the potential unpaid overtime wages total $539,429.47 ($36.23 overtime rate x 1 hour x 14,889 workweeks). (*Id.*)

### 2. Meal Period Claims (Third Cause of Action)

32. Plaintiff contends that "Defendant **regularly** failed to provide Plaintiff and the Class with both meal periods as required by California law." (Ex. A, Compl., ¶ 53) (emphasis added). Plaintiff claims that "Defendants' policy and practice was not to provide meal periods to Plaintiff and the Class in compliance with California law." (*Id.* at ¶ 16.) The statute of limitation for a meal period claim is three years, arguably extended to four years due to the unfair competition law claim. The money owed for a missed meal period is one hour of pay. Labor Code § 226.7.

33. The average hourly rate for Plaintiff and the Class from October 28, 2018 to June 1, 2023 was $24.15. (Robbins Dec., ¶ 3.) Plaintiff and the Class Members worked approximately 14,889 weeks from October 28, 2018 to June 1, 2023. (*Id.*)

34. Plaintiff's allegations that Defendants "regularly" failed to provide legally compliant meal periods supports the plausible assumption that each putative class member missed four meal periods per workweek (and does not take into consideration allegedly second meal breaks to which employees may be entitled if they work over 10 hours in a day). Thus, an estimate of the amount in controversy for Plaintiff's meal period claim is approximately $1,438,277.40 ($24.15 hourly rate x 4 violations x 14,889 workweeks). (*Id.*)

### 3. Rest Break Claims (Fourth Cause of Action)

35. Plaintiff alleges that "Defendants **regularly** required Plaintiff and the Class to work in excess of four consecutive hours a day without …authorizing and permitting them to take a 10-minute…rest break." (Ex. A, Compl., ¶ 17.) (emphasis added), and that "Defendants failed to authorize Plaintiff and the Class to take rest breaks, regardless of whether employees worked more than four hours in a workday." (Ex. A, Compl., ¶ 57.) Further, Plaintiff contends that IDT's "policy and practice was to not authorize and permit Plaintiff and the Class to take rest periods in compliance with California law. (*Id.* at ¶ 17.) The statute of limitation for a rest break claim is three years, arguably extended

1  to four years due to the unfair competition law claim. The money owed for a missed rest
2  break is one hour of pay. Labor Code § 226.7.

3      36.    The average hourly rate for Plaintiff and the Class from October 28, 2018 to
4  June 1, 2023 was $24.15. (Robbins Dec., ¶ 3.) Plaintiff and the Class Members worked
5  approximately 14,889 weeks from October 28, 2018 to June 1, 2023. (*Id.*)

6      37.    Plaintiff's allegations that Defendants "regularly" failed to provide legally
7  compliant rest breaks supports the plausible assumption that each putative class member
8  missed nine rest breaks per pay period. Thus, an estimate of the amount in controversy
9  for Plaintiff's rest break claim is approximately $1,618,062.08 [$24.15 hourly rate x 9
10 violations per pay period x (14,889 workweeks ÷ 2 weeks per pay period)]. (*Id.*)

    **4.**    **Waiting Time Penalties - Labor Code §§ 201-203 (Fifth Cause of Action)**

13     38.    Labor Code § 203(a) states that the wages of an employee who is discharged
14 or quits "shall continue as a penalty from the due date thereof at the same rate until paid
15 or until an action therefor is commenced; but the wages shall not continue for more than
16 30 days." The statute of limitations for recovery of waiting time penalties under Labor
17 Code § 203 is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010)
18 (holding that a three year statute of limitations applied to § 203 claims).

19     39.    Plaintiff alleges that IDT failed to timely pay Plaintiff and putative class
20 members all wages due upon separation of employment. (Ex. A, Compl. ¶¶ 61-62.)

21     40.    During the relevant three-year time period for waiting penalties plus 178
22 days for COVID tolling, from October 28, 2019 to June 1, 2023, IDT terminated the
23 employment of approximately 90 non-exempt employees. (Robbins Dec., ¶ 4.) The
24 average hourly rate for Plaintiff and the Class from October 28, 2018 to June 1, 2023 was
25 $24.15. (*Id.*, ¶ 3.) Accordingly, although IDT disputes liability, a reasonable estimate of
26 the amount in controversy for section 203 penalties is $521,640 ($24.15 hourly rate x 8
27 hours per day x 30 days x 90 terminated employees). (*Id.*, ¶ 3, 4.)

28     **5.**    **Wage Statement Penalties (Sixth Cause of Action)**

41. Labor Code § 226(e) provides an employee a minimum of $50.00 for the initial pay period in which a violation occurs, and $100.00 for each further pay period in which a violation occurs, up to a maximum penalty of $4,000.00 per employee. The statute of limitations for penalties under Labor Code section 226 is one year. Cal Civ. Proc. § 340(a); *Caliber Bodyworks, Inc. v. Super. Ct.*, 134 Cal. App. 4th 365, 376 (2005) (one-year statute of limitations applicable on claim for Labor Code section 226(e) penalties under CCP Section 340.).

42. Plaintiff alleges that in violation of Labor Code section 226(a), throughout the statutory period, IDT failed to furnish accurate, itemized wage statements to Plaintiff and the putative class members. (Ex. A, Compl., ¶¶ 19, 68.) .

43. IDT employed approximately 118 hourly employees in California from October 28, 2021 to June 1, 2023. (Robbins Decl., ¶ 5.) The total number of pay periods for these employees from October 28, 2021 to June 1, 2023 is 3,153. (*Id.*) As a result, a reasonable exposure estimate for Plaintiff's inaccurate wage statement claim is $309,400 [(118 employees x $50 per employee for the initial violation) + ((3,153 total pay periods - 118 initial pay periods) x $100), up to $4,000 per employee]. (*Id.*)

      **6.**     **Reimbursement of Business Expenses (Seventh Causes of Action)**

44. Plaintiff alleges that "Defendants have wrongfully required Plaintiff and the Class to pay expenses that they incurred in direct discharge of their duties for Defendants." (Ex. A, Compl., ¶ 20.) Specifically, Plaintiff contends that "Plaintiff and the Class regularly paid out-of-pocket for necessary employment related expenses, including, without limitation, the use of his personal cellular phone for work-related purposes." (*Id.*)

45. The statute of limitations for failure to reimburse business expenses under California Labor Code § 2802 is three years. Cal Civ. Proc. § 338. The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations. *Falk, supra,* 237 Cal. App. 4th at 1462, n.12 ("actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). Plaintiff alleges a claim for failure to reimburse for business expenses as part

1  of her unfair competition claim under Business and Professions Code section 17200, et
2  seq. (Ex. A, Compl., ¶ 93.) Accordingly, the proposed class period for Plaintiff's
3  reimbursement claim is from October 28, 2018 to the present.

4      46.    IDT employed approximately 180 hourly employees in California from
5  October 28, 2018 to June 1, 2023. (Robbins Decl., ¶ 5.) During the period of October 28,
6  2018 to June 1, 2023, there are approximately 55 months.

7      47.    A reasonable estimate of the monthly cell phone expenses incurred by
8  Plaintiff and the Class is $20.00 per month. Accordingly, an estimate of the amount in
9  controversy for Plaintiff's reimbursement claim is $198,000 (180 employees x $20/month
10  x 55 months). (*Id.*)

### 7. Plaintiff's Remaining Claim (Eighth Causes of Action)

12      48.    As set forth above, Plaintiff and the Class's potential damages for the first
13  through seventh causes of action far exceed the minimum jurisdictional amount in
14  controversy. Consideration of Plaintiff's remaining claim for failure to produce requested
15  employment records would only extend the degree to which the amount in controversy
16  threshold is exceeded.

### 8. Attorney's Fees

18      49.    Plaintiff additionally seeks attorneys' fees. (Ex. A, Compl., Prayer for
19  Relief.) *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for
20  statutory attorneys' fees are to be included in amount in controversy, regardless of
21  whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.
22  Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff
23  to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to
24  resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to
25  the amount in controversy.").

26      50.    A reasonable estimate of fees likely recoverable may be used in calculating
27  the amount in controversy. *See Longmire v. HMS Host USA, Inc.*, No. 12-cv-2203 AJB
28  (DHB), 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into

1  account reasonable estimates of attorneys' fees likely to be incurred when analyzing
2  disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at
3  1010-11); *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL
4  1302504, at *2 (E.D. Cal. May 1, 2007) (attorneys' fees appropriately included in
5  determining amount in controversy).

6  51.  In the class action context, courts have found that 25 percent of the
7  aggregate amount in controversy is a benchmark for attorneys' fees award under the
8  "percentage of fund" calculation; courts may depart from this benchmark when
9  warranted. *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012)
10 (attorneys' fees appropriately included in determining amount in controversy under
11 CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also
12 established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees
13 calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory*
14 *Specialists*, 2011 WL 1230826, at *28-29 (N.D. Cal. Apr. 1, 2011) (finding ample
15 support for adjusting the 25% presumptive benchmark upward and found that plaintiffs'
16 request for attorneys' fees in the amount of 42% of the total settlement payment was
17 appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at
18 *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total
19 gross settlement amount to be reasonable).

20 52.  Even under the conservative benchmark of 25 percent of the total amount in
21 controversy for Plaintiff's claims, attorneys' fees alone would be $1,412,152.52 in this
22 case [$5,630,658.80 total amount in controversy x 0.25].

23 **9.  Summary of Amount in Controversy Broken Down By Claim**
24 53.  Although Defendant denies Plaintiff's allegations that he or Class Members
25 are entitled to any relief for the above-mentioned claims, based on the foregoing

13

calculations, the aggregate amount in controversy for the class, including attorneys' fees, is approximately $6,679,933.31[2] calculated as follows:

| Claim | Amount In Controversy |
|---|---|
| Unpaid Minimum and Straight Time Wages Claim | $359,569.00 |
| Liquidated Damages for Unpaid Straight Time Wages Claim | $359,569.00 |
| Unpaid Overtime Claim | $539,428.00 |
| Meal Period Claim | $1,438,277.00 |
| Rest Period Claim | $1,618,062.00 |
| Waiting Time Penalties | $521,640.00 |
| Wage Statement Claim | $309,400.00 |
| Reimbursement Claim | $198,000.00 |
| **Sub-Total** | **$5,343,945.00** |
| Attorneys' Fees (25%) (based on the above calculated claims only) | $1,335,986.00 |
| **Total (on the above calculated claims only)** | **$6,679,931.00** |

54.   Because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28

---

[2] The amount in controversy would be even higher if damages were extrapolated through the class certification deadline given Plaintiff's proposed class ends when "notice of the class is sent" after a class is certified. (Ex. A, Compl., ¶ 25.)

14

U.S.C. § 1332(d)(2) and supplemental jurisdiction under 28 U.S.C. § 1367. This action is proper for removal to this Court pursuant to 28 U.S.C. § 1441(a).

## IV. VENUE

55. Venue lies in the United States District Court, Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(d). This action originally was brought in San Diego County Superior Court of the State of California, which is located within the Southern District of California. 28 U.S.C. § 84(d). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## V. NOTICE OF REMOVAL

56. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of San Diego, pursuant to 28 U.S.C. § 1446(d). the Notice of Removal is concurrently being served on all parties.

## VI. PRAYER FOR REMOVAL

57. WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

DATED: June 8, 2023                SEYFARTH SHAW LLP

By: *s/ Peter J. Choi*
Timothy M. Rusche
Peter J. Choi
Marie N. Naguib
Attorneys for Defendant
INTEGRATED DNA TECHNOLOGIES, INC.